tion, with his right hand inside the elevator shaft, hammering nails to attach the jamb to the framework of the door; the nails being held in his left hand. While so engaged, the elevator descended and caught his right hand (still inside the shaft) between the floor of the elevator and the door sill, a space of about an inch and a half, causing the injuries for which he seeks compensation in this action.

Plaintiff testified that he had set half a dozen doors like the one in question on different floors of the building, with the elevators running all the time. He admitted that the place he was working at was a dangerous one, that he knew he had to be very careful there, that the elevator went up and down several times while he was at work on the morning in question, and that he knew the car was above when he put his hand inside the shaft. The cable was visible when the car was below the floor where he was at work, but was not in sight when the car was above it. The record is devoid of any proof that any of the elevator operatives employed by the defendant knew, or had reasonable ground to believe, that workmen would be required in the course of their duties to project any part of their bodies into the elevator shaft. There is no proof that the operator in charge of the particular elevator which caused the accident saw plaintiff or any other workman at work in or near the shaft. Plaintiff testified that, when the elevator descended for the last time before the injuries were caused, he turned around to take some tools, and by the time he had picked them up the elevator had ascended. There was nothing, therefore, from any position in which the plaintiff was seen by the operator, which would have suggested to the latter that the former would do any part of his work within the shaft.

The case comes clearly within the rule laid down in Lynch v. Elektron Mfg. Co., 195 N. Y. 171, 88 N. E. 48, that workmen about to perform duties within an elevator shaft should notify some one in authority of their intention so to do, and should make an arrangement for their protection while so engaged, failure to do which is negligence upon the part of the workmen. No such notice was given in the case at bar, nor was any such arrangement made.

It follows that the order appealed from, setting aside the judgment in favor of plaintiff for $1,000, and directing a new trial of the action, was proper, and should be affirmed, with costs to respondent.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur. Mc-LAUGHLIN, J., dissents.

---

FIDELITY MUT. LIFE INS. CO. v. RICHLAND et al.

(Supreme Court, Appellate Division, First Department. December 13, 1912.)

PRINCIPAL AND SURETY (§ 69*)—EXTENT OF LIABILITY—TERM—RE-EMPLOY-MENT.

    The sureties on a bond conditioned for a due performance of the requirements of the principal's contract of a certain date as insurance solicitor, and of any amendments and supplements thereto, and of all contracts thereafter made between the parties, were liable only for de-

fault of the principal occurring during his continuous employment, and not for defaults occurring after he had resigned and been re-employed.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 116; Dec. Dig. § 69.*]

Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Appellate Term, First Department.

Action by the Fidelity Mutual Life Insurance Company against Harris Richland and his sureties. The Appellate Term affirmed a judgment for the sureties, and plaintiff appeals. Affirmed.

See, also, 150 App. Div. 902, 134 N. Y. Supp. 1132.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Richard S. Harvey, of New York City (Lewis Squires, of New York City, on the brief), for appellant.

Adolph Feldblum, of Brooklyn (Philip Levison, of Brooklyn, on the brief), for respondents.

LAUGHLIN, J. This is an action against one Harris Richland, as principal, and his sureties, on a bond given to the plaintiff, for the due performance of his contract as a solicitor of insurance, and the repayment of all moneys of the plaintiff coming into his hands, and of all moneys loaned or advanced to him by it. It was alleged, and established on the trial by uncontroverted evidence, that the principal became indebted to the plaintiff between the 15th day of July and 31st day of December, 1910, in the sum of $300, which he failed to pay, and which was still due and owing from him to the plaintiff. The contract of employment was in writing. It bears date the 25th day of May, 1910, and recites that it was to take effect on the 25th day of the preceding month, which was the day the principal entered the employ of the plaintiff. It was conceded on the trial that the principal continued in the employ of the company, pursuant to the provisions of said contract, until on or about the 1st day of June thereafter, when he resigned and the contract was thereupon canceled by mutual consent. He re-entered the employ of the plaintiff on the 15th day of July thereafter in like capacity, and so continued until the 31st day of December of that year, and in the course of his employment between those dates he became indebted to the plaintiff in the amount for which judgment is demanded. The learned Municipal Court judge granted judgment for the plaintiff against the principal on the bond, but in favor of the sureties.

The appeal presents a question of law only; for all material facts were stipulated on the trial. By the original contract Richland was employed to solicit insurance and to collect initial premiums, and was to receive for his services specified commissions. No time of employment was specified in the contract. The bond upon which the action is brought bears date the 6th day of May, 1910. The record does not show the date of its execution; but it is fairly to be inferred that it was on or after the 25th day of May, for the reason that it contains an express reference to said contract of employment, which,

it recites, was made on the 25th day of May, 1910. It is recited in the bond that the condition of the obligation is such that if Richland shall promptly pay to his employer all moneys which shall come into his hands and all loans or advances made to him, or to any agent appointed by him, on account of future commissions "or otherwise," and all moneys due from him to the company, and shall refrain from incurring any indebtedness in the name of the company without the written consent of its president,

"and shall and do in all things well and truly observe, fulfill, and keep all and singular the articles, .clauses, provisions, conditions, and agreements, whatsoever, which on the part of the said Harris Richland are or ought to be observed, performed, fulfilled, and kept, comprised and mentioned in a certain contract or agreement between the said Harris Richland and the said the Fidelity Mutual Life Insurance Company, made the 25th day of May, 1910, and in any and all amendments and supplements thereto, and under or by reason of any and all modifications thereof, and any and all contracts or .agreements thereafter made by and between the said Harris Richland and the said company, or its representative, according to the purport, true intent, and meaning of the same, then this obligation to be null and void; otherwise to be and remain in full force and virtue."

It was further therein expressly provided as follows:

"Notice to the sureties or either of them of any modification or amendment of said contract or of any subsequent contract between the said principal .and the said company is hereby expressly waived."

These are the only material facts disclosed by the record upon which the decision of the appeal must be made. It is contended by the learned counsel for the insurance company that the bond plainly obligated the sureties for any liability to the insurance company of the character therein specified, whether incurred under the then existing contract of employment, to which express reference was made, or under any other subsequent contract of the same or any other nature, and whether connected with the original employment or in no manner related thereto. I am of opinion that such is not the proper construction of the bond. It was, of course, entirely competent for the sureties to become responsible to the plaintiff for the due performance, not only of the existing contract of employment at the time the bond was executed, but of any contract ever made, either before or after that time, between their principal and the insurance company; but it is not reasonable to infer from the contract which they executed, which presumably was drawn by the insurance company, that they intended to incur an extreme liability. They doubtless contemplated that the terms of the employment, both with respect to compensation and with respect to the duties to be performed, might be changed; but they contracted, I think, upon the theory that they were to become liable for any default on the part of their principal occurring during a *continuous* employment from the time he entered the service of the plaintiff. If they had anticipated that his contract of employment was to be canceled within a short time, and that he was wholly to sever his employment with the plaintiff and enter upon some other employment, it is not probable that they would have consented to become sureties for his conduct at some remote time in the future, when he

might again re-enter the plaintiff's employ and with respect to which they would have no knowledge. Under the construction of this bond contended for by the learned counsel for the insurance company, the sureties would be liable if plaintiff had discharged their principal for embezzling funds and had re-employed him after he had expiated his crime by a term in state's prison. When the original contract was canceled by mutual consent and the principal left the employ of the plaintiff, the sureties could not become liable for their principal's contract under another contract of employment without a new contract with them, and they, therefore, as sureties, were not interested in the future contract of their principal.

I am of opinion, therefore, that the learned Municipal Court judge correctly construed the bond. It follows that the determination should be affirmed, with costs.

McLAUGHLIN and MILLER, JJ., concur. DOWLING, J., dissents.

INGRAHAM, P. J. (dissenting). On April 25, 1910, the plaintiff made a contract with the defendant Richland, by which Richland was to enter in the employ of the plaintiff as its representative to solicit applications for insurance and to collect the premiums payable on contracts of insurance, which premiums were to be paid over to the plaintiff, less the commissions, in certain territories specified; the defendant Richland to receive as compensation for his services certain commissions specified. It was further agreed that Richland should execute and deliver to the plaintiff, within 10 days from the date of the agreement, a good and sufficient indemnity bond, and that, upon failure to execute such bond, the contract, at the option of the plaintiff, might be canceled and annulled, and that either party might terminate the agreement by giving the other party 30 days' notice in writing to that effect, whereupon the authority of Richland to collect premiums should cease. On the 6th of May, 1910, in the performance of this provision of the contract, the defendant Richland, as principal, and the other defendants, as sureties, executed a bond in the sum of $300; the condition of the obligation being that if the principal, Richland,

"shall and do well and truly promptly pay or cause to be paid unto the above named the Fidelity Mutual Life Insurance Company, or its legal representative, any and all moneys belonging to said company which may come into his hands, and shall pay or cause to be paid to said company all loans or advances made to him by said company, or to any special agent or subagent appointed by him, on account of future commissions or otherwise, and any and all other moneys due from him to said company, whether the same shall be or shall have been received or liability therefor incurred, by him personally and solely or through or together with any copartner, coagent, subagent, or other person, * * * and shall and do in all things well and truly observe, fulfill, and keep all and singular the articles, clauses, provisions, conditions, and agreements whatsoever, which on the part of the said Harris Richland are or ought to be observed, performed, fulfilled, and kept, comprised and mentioned in a certain contract or agreement between the said Harris Richland and the said the Fidelity Mutual Life Insurance Company, made the 25th day of May, 1910, and in any and all amendments and supplements thereto, and under or by reason of any and all modifications thereof,

and any and all contracts or agreements thereafter made by and between the said Harris Richland and the said company, or its representative, according to the purport, true intent, and meaning of the same, then this obligation to be null and void; otherwise to be and remain in full force and virtue. Notice to the sureties or either of them of any modification or amendment of said contract or of any subsequent contract between the said principal and the said company is hereby expressly waived."

The date of the contract between Richland and the plaintiff is stated in the bond to be May 25, 1910. That was evidently a mistake for April 25, 1910. Upon the trial the bond given by the defendant and the contract between the plaintiff and Richland were introduced in evidence, and it was conceded that Richland was employed by the defendant under this contract from April 25, 1910, to June 1, 1910, and that on June 1, 1910, Richland was not indebted to the plaintiff; that on or about June 1, 1910, Richland resigned from said employment and the contract of April 25, 1910, was canceled by mutual consent of the parties thereto; that on or about July 25, 1910, Richland against entered the employ of the plaintiff as an insurance solicitor, and continued in such employment up to or about December 31, 1910; and that in the course of the employment from July 15, 1910, to December 31, 1910, Richland became indebted to the plaintiff in a sum in excess of $300, which sum is still owing from Richland to the plaintiff. Upon this stipulation the case was submitted to the trial justice, who decided in favor of the defendant, and judgment was thereupon entered. The plaintiff appealed to the Appellate Term, where the judgment was affirmed, and then to this court.

I think this indebtedness of the defendant Richland to the plaintiff was not within the condition of the bond. The bond was given under the provisions of the contract, a failure to give which would have justified the plaintiff in abrogating the contract. The bond was to remain in full force and effect, and the obligation of the sureties continued, unless the principal, Richland, should well and truly promptly pay or cause to be paid to the plaintiff any and all moneys belonging to the company, and should pay or cause to be paid to the said company all loans or advances made to him by said company, and any and all other moneys due from him to said company, "and any and all contracts or agreements thereafter made by and between the said Harris Richland and the said company, or its representative."

The intent is clearly expressed that Richland should not only keep and perform all the obligations of this contract, but of all other contracts and agreements made between him and the plaintiff, and to pay and discharge any and all moneys due from him to the said company. It was not at all confined to moneys payable under this contract, but was to include all moneys payable under this contract, or any other contract or agreement thereafter made by and between the said Richland and the said company and its representatives. I take it that if, the day after this bond was executed and delivered, the parties had abrogated this contract and employed Richland without any specific contract, any default of his would have been covered by the bond as given. It was given to insure the faithful performance by Richland of his obligations to the company, and a repayment by Richland of all

moneys due from him to said company, whether such moneys became due under the contract or in any other way. There is nothing in the contract to require the company to make advances to Richland, and yet it is clear that if the plaintiff did make advances to Richland, so that he became a debtor to the company while the contract was in existence, the sureties on the bond would be liable, and the bond expressly provides that it was to cover, not only obligations which were incurred by Richland under the contract, but under any other contract or agreement made between Richland and the plaintiff. Undoubtedly the obligation of a surety cannot be extended beyond the fair meaning of the bond or other obligation upon the suretyship; but where the bond clearly includes within its provision an obligation of the principal for which the surety was to be liable, it seems to me that the bond should receive the construction clearly expressed by the language used.

I think, therefore, that the defendant was liable and the judgment should be reversed, and judgment entered for the plaintiff for the amount of the bond.

DOWLING, J., concurs.